UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LUCY J. BARTRUM,

                             Plaintiff,

                    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.
_____

**DECISION AND
ORDER**

11-CV-850
(VEB)

## I. INTRODUCTION

In June of 2009, Plaintiff Lucy J. Bartrum applied for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since May of 2009 due to physical and mental impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through her attorneys, Olinsky and Shurtliff, Howard D. Olinsky, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3). The parties, by and through their respective counsel, consented to the jurisdiction of a United States Magistrate Judge on October 22, 2012. (Docket No. 18).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

On June 24, 2009, Plaintiff applied for SSI benefits and DIB, alleging that she has been unable to work since May 18, 2009. (T at 194-205, 226).[1]  The applications were denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Syracuse, New York, on December 16, 2010, before ALJ Barry Peffley, who presided via videoconference from Baltimore, Maryland.  (T at 24, 26).  Plaintiff appeared with her attorney and testified. (T at 37-48).   Testimony was also received from Dothel Edwards, a vocational expert. (T at 48-55).

On January 7, 2011, ALJ Peffley issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period and denying Plaintiff's claims for benefits.  (T at 14-23).  The ALJ's decision became the Commissioner's final decision on June 8, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff, by and through her attorney, timely commenced this action by filing a Complaint on July 21, 2011. (Docket No. 1).   The Commissioner interposed an Answer on March 5, 2012.  (Docket No. 9).  Plaintiff filed a supporting Brief on April 19, 2012. (Docket No. 12).  The Commissioner filed a Brief in opposition on June 4, 2012. (Docket No. 14). With leave of the Court, Plaintiff filed a Reply Brief on June 18, 2012. (Docket No. 16).  As noted above, the parties, through their respective attorneys, consented to the jurisdiction of the undersigned on October 22, 2012. (Docket No. 18).

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 10).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons set forth below, Plaintiff's motion is granted, the Commissioner's motion is denied, and this case is remanded for further proceedings.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct.

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013, and had not engaged in substantial gainful activity since May 18, 2009, the alleged onset date. (T at 16).

The ALJ found that Plaintiff had the following impairments considered "severe" under the applicable Social Security Regulations (the "Regulations"): arthritis, degenerative disc disease, chronic neck pain, coronary artery disease, cardiomegaly, cardiomyopathy,

---

considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

bronchitis, obesity, and dysthymic disorder. (T at 16).  However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 17-18).

After reviewing the medical evidence, the ALJ concluded that Plaintiff retained the residual functional capacity to perform somewhat less than the full range of light work as defined in 20 C.F.R. § 404.1567 (b) and 416.967 (b). (T at 18-21).  The ALJ found that Plaintiff was unable to perform any of her past relevant work as a cashier/checker, certified nurse's assistant, industrial truck operator, home attendant, or licensed practical nurse, as the performance of those occupations was precluded by Plaintiff's residual functional capacity. (T at 21-22).

Considering Plaintiff's residual functional capacity, age (47 years old on the alleged onset date), education (high school), and work experience, the ALJ determined that Plaintiff was able to perform jobs that exist in significant numbers in the national economy.  (T at 22-23).  Accordingly, the ALJ concluded that Plaintiff had not been under a "disability," as that term is defined under the Act, from the alleged onset date (May 18, 2009) through the date of the ALJ's decision (January 7, 2011), and was therefore not entitled to benefits. (T at 23).  As noted above, the ALJ's decision became the Commissioner's final decision on June 8, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2.    Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed.  She offers four (4) principal arguments in support of her position.  First, Plaintiff argues that the ALJ should have determined that her headaches were a severe impairment.  Second, Plaintiff Plaintiff contends that the ALJ's residual functional capacity determination is not supported

by substantial evidence. Third, Plaintiff challenges the ALJ's credibility determination. Fourth, Plaintiff argues that the ALJ's step 5 analysis was flawed. This Court will address each argument in turn.

### a. Severity of Headaches

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March

19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

Plaintiff argues that her headaches should have been considered a severe impairment. She points to the following evidence in support of this argument: Plaintiff completed a daily log documenting the severity of her headaches, in which she indicated that she suffered from headaches on most days during September, October, November, and December 2010, with the headache pain frequently confining her to bed. (T at 499-502). Plaintiff testified that her headaches impair her concentration. (T at 44).

In December 2008, Dr. Scott Van Gorder, a treating physician, reported that Plaintiff experiences headaches "chronic in nature, daily basis." (T at 289). During the same month, R. Jason Pratt, Plaintiff's physical therapist, noted that Plaintiff complained of intermittent headaches. (T at 357). Dr. Kalyani Ganesh, a consultative examiner, diagnosed a history of headaches. (T at 363).

The ALJ did not identify Plaintiff's headaches as a severe impairment and, in fact, did not address the status of Plaintiff's headaches as a separate impairment whatsoever. (T at 16). The ALJ did, however, determine that Plaintiff's chronic neck pain was a severe impairment. (T at 16). Further, the ALJ addressed Plaintiff's testimony regarding her headaches and concentration, finding that the testimony was not entirely credible. (T at 18). For the following reasons, this Court finds no reversible error with regard to this aspect of the ALJ's decision.

First, Plaintiff did not identify her headaches as a separate disabling impairment in her intake interview. (T at 226). Second, it appears Plaintiff's headaches were related to her severe neck pain, which the ALJ did find to be a severe impairment. For example, in a June 2009 treatment note, Dr. Van Gorder explained that Plaintiff had "a problem with

8

chronic daily headaches and chronic neck pain and the neck pain leads to the headaches." (T at 293).  In a November 2009, Dr. Van Gorder indicated that Plaintiff's headaches were "associated with" her neck pain. (T at 497).   Plaintiff does not point to any evidence identifying limitations arising solely from her headaches (as opposed to limitations arising from her chronic neck pain and the associated headaches).  As noted above, the ALJ found Plaintiff's neck pain to be a severe impairment and was mindful of Plaintiff's allegations concerning headaches and concentration. (T at 16, 18).  The ALJ's RFC determination incorporated a requirement that Plaintiff not be required to engage in activities likely to aggravate her neck pain (e.g. frequently engaging in neck rotation, flexion, or extension). (T at 19).  Further, the ALJ also incorporated the testimony concerning concentration problems by finding that Plaintiff was restricted to "work limited to simple, routine, and repetitive tasks . . . ." (T at 19).

Lastly, because the ALJ found that Plaintiff suffered from other severe impairments, was aware of (and incorporated) the evidence concerning chronic headaches, and continued with the sequential analysis, any arguable error in not considering the headaches as a separate impairment was, under the circumstances, harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe

impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).  Accordingly, this Court finds no reversible error with regard to this aspect of the ALJ's decision.

> **b.   RFC Determination**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In the present case, the ALJ determined that Plaintiff retained the RFC to perform light work, as defined in 20 CFR § 404.1567 (b) and 416.967 (b), except that Plaintiff would

need to work in a job where she was allowed to "sit or stand alternatively at will, but would not have to leave the workstation." (T at 18-19).  The ALJ also concluded that Plaintiff could frequently push or pull with her left upper extremities and frequently engage in neck rotation, flexion or extension; but only occasionally climb ramps or stairs; never climb ladders, reports or scaffolds; only occasionally stoop, kneel, crouch, bend or crawl; frequently reach; and occasionally reach overhead with her left upper extremity. (T at 19).  The ALJ determined that Plaintiff must avoid concentrated exposure to operational control of moving machinery and unprotected heights and avoid concentrated exposure to irritants and poorly ventilated areas. (T at 19).  The ALJ further found that Plaintiff was limited to simple and repetitive tasks, in a workplace that involved only simple, work-related decision, with few (if any) work place changes and no fast-paced production requirements. (T at 19).

Plaintiff challenges the ALJ's RFC determination.  In particular, Plaintiff points to a September 2010 medical source statement from Dr. Scott Van Gorder, her treating physician.  In that statement, Dr. Van Gorder opined that Plaintiff could sit for more than 2 hours at a time, stand for 15 minutes at a time, stand/walk for less than 2 hours in an 8-hour workday, and sit for at least 6 hours. (T at 408).  He indicated that Plaintiff would need to have her legs elevated the entire work-day and would need to shift positions at will and take frequent, unscheduled breaks. (T at 408).

Dr. Van Gorder found that Plaintiff could occasionally lift less than 10 pounds, rarely lift 20 pounds, and never lift more than that.  He concluded that she could never look down with sustained flexion of her neck, rarely turn her head right or left, and never look up or hold her head in static position. (T at 408).  Dr. Van Gorder opined that Plaintiff could never grasp/turn/twist objects were her hands, never engage in fine manipulations with her

11

fingers, and never reach with her arms. (T at 409).  He identified Plaintiff's symptoms as chest pain, edema, anginal equivalent pain, nausea, shortness of breath, palpitations, fatigue, dizziness, weakness, and sweatiness. (T at 409).

Although Dr. Van Gorder generally rated Plaintiff's mental abilities and aptitudes as good with respect to unskilled work, he opined that Plaintiff would not be able to meet competitive standards in terms of performing at a consistent pace without an unreasonable number and length of rest periods and dealing with stress. (T at 410).

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In the present case, the ALJ afforded "some weight" to Dr. Van Gorder's September 2010 opinion and "great weight" to an earlier opinion provided by Dr. Van Gorder in February of 2010. (T at 21).  For the following reasons, this Court finds that the ALJ's consideration of Dr. Van Gorder's opinions was based upon a fundamental factual error and must be revisited on remand.

In February of 2010, Dr. Van Gorder indicated that Plaintiff complained of neck pain, but was "currently doing okay" and was "hoping to work again." (T at 496).  He suggested "no lifting greater than 20 pounds," but opined that Plaintiff "could return to regular work as needed." (T at 496).

In his decision, the ALJ assigned "great weight" to the February 2010 opinion, which he described as the treating physician's "*most recent* decision . . . ." (T at 21)(emphasis added).  The ALJ mistakenly believed Dr. Van Gorder's September 2010 opinion was rendered in "September of 2009 . . . ." (T at 21).

This critical error caused the ALJ to conclude that Plaintiff  had "shown significant improvement from her cardiac and musculoskeletal impairments." (T at 21).  The ALJ erroneously indicated that Plaintiff's "primary care physician" (Dr. Van Gorder) believed that Plaintiff could "return to work with minimal limitations." (T at 20).  In fact, Dr. Gorder's opinion had changed, but rather than showing improvement, the change of opinion indicated a serious deterioration of Plaintiff's condition, with work-related limitations materially at odds with the ALJ's RFC determination.  The ALJ never addressed this discrepancy because of his error regarding the date of the September 2010 evaluation.

13

The Commissioner dismisses the ALJ's fundamental error in a footnote (Commissioner's Brief, Docket No. 14, at p. 17 n. 3) and then argues that Dr. Van Gorder's September 2010 opinion was, in any event, contradicted by the balance of the evidence.

However, the ALJ did not reject Dr. Van Gorder's September 2010 opinion as inconsistent with the evidence and, indeed, afforded the opinion "some weight." (T at 21). The ALJ gave "great weight" to the February 2010 opinion because of his erroneous belief that it was the "most recent" and demonstrated that Plaintiff's condition had improved. (T at 21). In other words, the ALJ was inclined to give the most weight to the "most recent" opinion from the treating physician. Thus, to accept the Commissioner's argument, this Court would have to completely ignore the manner in which the ALJ considered this extremely critical evidence and create an entirely new rationale for the decision. This Court simply cannot, and will not, re-weigh the medical evidence and/or "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself." Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir.2005); see also Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)); see also Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999) ("Nor may [the Court] properly affirm an administrative action on grounds different from those considered by the agency") ( citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

The Commissioner also points to the report of Dr. Kalyani Ganesh as supportive of the decision to deny benefits. Dr. Ganesh, a consultative examiner, assessed no gross limitation as to sitting, standing, or walking; and a "mild to moderate" limitation as to lifting, carrying, pushing, and pulling. (T at 363). However, Dr. Ganesh's opinion was rendered

14

in September of 2009, a year before Dr. Van Gorder's most recent assessment.   In addition, an opinion based upon a single examination deserves limited weight and cannot, without more, override the assessment of a treating physician. See Crespo v. Apfel, No. 97 CIV 4777, 1999 WL 144483, at *7 (S.D.N.Y. Mar. 17,1999) ("In making a substantial evidence evaluation, a consulting physician's opinions or report should be given limited weight" because "they are often brief, are generally performed without benefit or review of the claimant's medical history and, at best, only give a glimpse of the claimant on a single day."); Garzona v. Apfel, No. 96 CV 6249, 1998 WL 643645, at *1 (E.D.N.Y. Sep. 18, 1998)(noting that "the opinion of a non-examining consultative physician, without more, [is] insufficient to constitute the requisite contrary substantial evidence" to override the treating physician's assessment).

For the foregoing reasons, this Court finds that a remand is necessary with regard to Dr. Van Gorder's opinions.  The ALJ will need to correct his error regarding the date of the September 2010 and re-weigh the evidence in light of that correction.[5]

### c.    Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

---

[5]Plaintiff also notes that the psychiatric review technique form completed by "R. Altmansberger" is incomplete, in that it did not contain a rating of Plaintiff's functional limitations or a function-by-function assessment of Plaintiff's mental RFC.  (T at 371-384).  Given that the ALJ found Plaintiff's dysthymic disorder to be a severe impairment and assessed mental limitations, the Commissioner should seek to have this form completed on remand.

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

> 1.    [Plaintiff's] daily activities;
> 2.    The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;

16

3.      Precipitating and aggravating factors;
4.      The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.      Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.      Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.      Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the present case, Plaintiff testified as follows: She has severe headaches, limited mobility in her neck, shortness of breath, and tingling in her left arm. (T at 41-42). She has edema in her feet and ankles, which manifests itself if she sits without her legs elevated. (T at 41-42). Plaintiff drops items frequently due to numbness in her arm and generally has left-sided weakness. (T at 42). She experiences severe headaches several times a month. (T at 44). She could sit for about 30 minutes before needing to change positions and could stand in one place for 10-15 minutes. (T at 45-46). Plaintiff becomes short of breath when walking more than a block. (T at 46). She can occasionally lift 5 to 10 pounds and has difficulty with stairs. (T at 47). She is depressed and cries frequently. (T at 48).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence and limited effects of the symptoms were not credible

17

to the extent they were inconsistent with his RFC assessment. (T at 20).

The ALJ's credibility assessment was directly impacted by the error discussed above concerning the date of Dr. Van Gorder's September 2010 report.   Indeed, the ALJ concluded that "the objective evidence [did] not indicate that the claimant's impairments are as severe as alleged or that she is unable to do work." (T at 20).   The ALJ then explained that Plaintiff had "shown significant improvement from her cardiac and musculoskeletal impairments" and noted that Plaintiff's treating physician had "reported that [Plaintiff] can return to work with minimal limitations." (T at 21).   These findings were based upon the ALJ's incorrect conclusion that Dr. Van Gorder's February 2010 opinion pre-dated his September 2010 assessment.   Accordingly, the question of Plaintiff's credibility must be revisited on remand.

### d.    Flawed Hypothetical Questions

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).

In this case, the ALJ's step 5 analysis was informed by a series of hypothetical questions presented to Dothel Edwards, a vocational expert.   The ALJ described a series of limitations consistent with his RFC determination and then asked the vocational expert to opine as to whether those limitations would preclude the hypothetical claimant from performing work that exists in significant numbers in the national economy. (T at 50-54).

18

A hypothetical question given to the vocational expert is appropriate and may be relied upon by the ALJ if the question fully encompasses the claimant's limitations. <u>Magee v. Astrue</u>, No. 5:05-CV-413, 2008 WL 4186336, at *20 (N.D.N.Y. Sept. 9, 2008) (citing <u>Varley v. Sec'y of Health & Human Servs.</u>, 820 F.2d 777, 799 (6th Cir.1987)). "If the factors set forth in the hypothetical are supported by substantial evidence, then the vocational expert's testimony may be relied upon by the ALJ in support of a finding of no disability." <u>Id.</u>

Here, because the ALJ's RFC determination was flawed (as it was based upon a fundamental error related to the treating physician's opinion), the hypothetical questions he presented to the vocational expert were likewise flawed.  Accordingly, this aspect of the ALJ's decision also cannot be sustained.

### 3.   Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" <u>Butts v. Barnhart</u>, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." <u>Kirkland v. Astrue</u>, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008).  For the foregoing reasons, this Court finds that remand is warranted.

## IV. ORDERS

The Commissioner's Motion for Judgment on the Pleadings is DENIED; Plaintiff's Motion for Judgment on the Pleadings is GRANTED; this case is remanded for further proceedings consistent with this Decision and Order; and the Clerk of the Court shall enter Judgment accordingly and close this case.

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Dated:   November 26, 2012

        Syracuse, New York